**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**SAMANTHA TONEY, individually and on behalf of all others similarly situated,**

***Plaintiff*,**

**v.**

**EVENFLO COMPANY, INC.,**
***Defendant*.**

Case No. 1:25-cv-13605

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff Samantha Toney ("Plaintiff") brings this Class Action Complaint against Defendant, Evenflo Company, Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of herself, and all others similarly situated who purchased certain Evenflo Revolve Slim 360 car seats. (collectively herein "the Products").

2. Unfortunately, nearly 325,000 Products sold across the country are unfit for their intended purpose because they are dangerously unsafe for infants[1].

[1] https://www.usatoday.com/story/cars/recalls/2025/09/30/evenflo-car-seat-recall/86437340007/

3. On or about September 29, 2025, the NHTSA (National Highway Traffic Safety Administration) issued a recall on certain car seats manufactured by Evenflo, for a choke hazard pertaining to its car seat headrest[2].

4. According to the NHSTA Recall Report, On October 2, 2023, Evenflo first received a report of a child picking at the foam of the product headrest and placing in in their mouth. Through the second quarter of 2025, Evenflo had received eight reports of foam access and ingestion. Evenflo is also aware of twelve additional reports of children accessing the foam (though not ingesting it)[3]

5. The Products are manufactured, advertised, sold, and distributed by Defendants or its agents, to consumers, including Plaintiff, across the United States.

6. All of these products were manufactured by Defendants, distributed to other corporations, and then sold to consumers across the United States.

7. Through marketing and sale, Defendants represented that the Products are safe for children. The corporate website proclaims "Family First, Always" as a theme for reassuring consumers that they provide safe products. They further brag about "Safety Innovation" and "Thoughtful Design" on the website "About Page.[4]"

8. Plaintiff and consumers do not know, and did not have a reason to know, that the Products purchased carried the potential for choking hazards. Consumers expect the products they purchased to be safe, especially products aimed towards children.

---

[2] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf
[3] Id.
[4] https://www.evenflo.com/pages/about-evenflo

9. On the other hand, Evenflo was first made aware of this choke hazard in 2023 and did nothing for nearly 2 hours except to continue selling the product in a defective condition and derive revenue and profits from said sales[5].

10. Other manufacturers produce and sell safe car seats, which is evidence that the risk inherent with Defendants' Products is demonstrably avoidable.

11. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

12. The Defendant's proposed recall solution does not address the underlying cause of the recall or restore confidence that Plaintiff and proposed class members have with the safety of the product.

13. At the time of their purchases, Defendants did not notify Plaintiff, and similarly situated consumers, of the Product's choking hazard through the product labels, instructions, packaging, advertising, or in any other manner, therefore, acting in violation of state and federal laws.

14. Plaintiff purchased the Products, while lacking the knowledge that Products could be dangerous if not deadly, thus causing serious harm to those who use such Products.

15. Because Plaintiff and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

16. As a result of the above losses, Plaintiff seeks damages and equitable remedies.

[5] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf

## PARTIES

17. Plaintiff Samantha Toney is a resident and citizen of Woodbridge, Virginia. Woodbridge is located within Prince William County, Virginia.

18. Defendant Evenflo Company, Inc. is a foreign Corporation that is registered in the State of Delaware with a Principal Place of Business as: 3131 Newark Drive, Suite 300, Miamisburg, Ohio 45342. The Defendant can be served through CT Corporation System located at 4400 Easton Commons Way Suite 125 Columbus, OH 43219.

## JURISDICTION AND VENUE

19. This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

20. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction over Defendant Evenflo Company, Inc. because Defendant has its principal place of business within the district and has substantial contacts with Ohio.

22. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that the Defendant., has its principal place of business within this District Court.

## FACTUAL ALLEGATIONS

23. This recall involves a car seat sold by Evenflo Company Inc called the "Revolve 360 Slim" online at the Defendant's website and in major retail outlets and their online platforms.

24. On or about March 24, 2025, Plaintiff purchased a Revolve 360 Slim Car Seat online from the Defendant's website. The original purchase price was $200 but she received a $40 "discount" along with free shipping and was still responsible for taxes.

25. Her car seat is subject to recall having a model number that begins with "3681". It was manufactured in May 2024.

26. In August 2025, emailed the company to complain about the car seat. One of the complaints concerned how the foam backing on the headrest was poorly attached to the frame and she specifically asked whether this constituted a defect and inquired about any replacements or warranties.

27. The company did not advise her their knowledge of the defect; offer a replacement; or even offer a repair.

28. Plaintiff's email specifically expressed disappointment with the quality of the product, especially at its price point and noted its inferiority to other competitor products. Hence, she expressed a belief that she was denied the benefit of the bargain for her purchase.

29. On or about September, the Defendant issued a voluntary recall through the NHTSA for these car seats for a choking hazard concerning its head rest[6][7]

30. As noted above, the Defendant promotes the safety and reliability of its Products.

31. Unfortunately, not all of Defendant's products are as safe as advertised. Here, according to the NHSTA, 324,997 units were recalled, and they estimated that 100% of the recalled units experience the defect[8].

---

[6] https://www.evenflo.com/pages/revolve360-slim-recall-u-s-canada
[7] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf
[8] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf

**Defendants' Revolve 360 Slim Car Seat Endangered Children**

32. The Defendant's car seat is susceptible to the head rests not being properly secured, allowing for it to become attached; children to eat the foam product and present a choke hazard to children utilizing the car seat[9].

33. The detachable head rest was known to the Defendant prior to the recall. As noted in the NHSTA, the Defendant received its first report of the defect in October 2023 and was aware of reports of children ingesting the headrest foam.[10]

**A. The Health and Safety Risks to Children Associated with the Use of the Products Renders Them Worthless**

34. As a result of the health and safety risks to infants posed by the use of the Revolve 360 Slim Car Seats, the Products have been rendered completely worthless or, at the very least, have been substantially diminished in value.

35. The information described above, including the now-known health and safety risks to infants, have rendered the Products worthless to consumers. If parents of infants choose to discontinue use of the Products, they must pay for another product that can serve the activity car seats' intended purpose.

36. Consumers have been told by Evenflo Company that they will mail replacement headrests beginning in November to impacted customers who register the Product with them. They are not, as of this writing, offering a full refund or a replacement with a comparable product[11]

**B. Defendants Delayed Their Recall**

37. As stated above, it is believed that the Defendant first became aware of the Defect in October 2023.

---

[9] https://www.cars.com/articles/nearly-325000-evenflo-child-safety-seats-recalled-for-choking-risk-516677/
[10] Id.
[11] https://www.evenflo.com/pages/revolve360-slim-recall-u-s-canada

38. Yet, Defendants continued to manufacture and sell the Products with such awareness until the September 29, 2025, Recall. During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Products and unreasonably put infants at risk of choking.

**C. <u>The Recall is Inadequate</u>**

39. The Defendant's proposed Recall is inadequate. The Defendant is not offering a refund. Rather, they are offering a "free repair kit" to known and registered consumers instead of offering a full recall.

40. The Defendant's Recall is not designed to reach every consumer as Class notification would require, leaving many consumers vulnerable to using a defective product.

*41.* The Defendant knew about this defect for two years and did nothing to fix it. There are no assurances that the repair remedy is adequate, and it also requires the consumer to properly install it. This is an additional burden that is placed upon the consumer as it was not part of the initial "benefit of the bargain" they entered into when buying the recalled car seats.

**D. Benefit of the Bargain**

42. The Defendant knowingly sold the Plaintiff a car seat knowing that it had reports of a year before manufacturing her defective car seat and about a year and a half before she purchased it.

43. The Plaintiff bargained for a safe car seat. One that would protect her child in case of an accident. Implicit with this bargain is the belief that the car seat would not expose the child to any other known or foreseeable dangers. Here, the child was exposed to a choking hazard known to the Defendant at the time of sale.

44. Plaintiff's purchase price was $200 less a $40 discount plus tax for a total of $169.60. In reality, a car seat exposing a child to a choking hazard is worthless and, according to the NHTSA Recall, all recalled products are deemed defective. Simply put, Plaintiff bargained for a safe car seat and, in reality, was knowingly sold a product that could expose her child to choking to death. This exposure was never a part of the bargain and Plaintiff and similarly situated Class Members are entitled to a full refund.

**E. Plaintiff**

45. Plaintiff Samantha Toney is, and was at all relevant times, an individual residing in Delmar, Maryland.

46. Plaintiff purchased her Revolve 360 Slim Slow Car Seat online on March 24, 2025. It was manufactured in May 2024. The beginning model number is "3681".

47. This Product is within Defendants' Recall.

48. At the time of her purchase, Plaintiff was unaware of the risks associated with the Product and the dangers it posed to her child's health and safety.

## TOLLING AND ESTOPPEL

**A. Discovery Rule Tolling**

49. Plaintiff and the members of the Class had no way of knowing about Defendants' conduct with respect to the choking hazards associated with the use of the Recalled Products.

50. Neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendants alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein.

51. For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). Plaintiff seeks class certification on behalf of the class defined as follows (the "Class"):

> All persons in the United States who purchased or used a Evenflo Revolve 360 Slim Car Seat with a model number beginning with 3681that was manufactured between December 1, 2022, through December 8, 2024.

53. Plaintiff reserves the right to modify or refine the definition of the Class based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

54. Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries and any entity in which Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this mater have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

55. **Numerosity (Rule 23(a)(1)).** The Class members are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class, as herein identified and described, is not known, but the Recall Notice indicates that approximately 325,000 individuals have purchased the Recalled Products.

56. **Commonality and Predominance (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

- Whether Defendants owed a duty of care to Plaintiff and the Class;
- Whether Defendants knew or should have known that the Recalled Products posed health and safety risks to infants;
- Whether Defendants wrongfully represented that the Recalled Products were safe;
- Whether the recalled Products retained any value post-recall;
- Whether Defendants wrongfully represented that the Recalled Products were safe to use;
- Whether Defendants wrongfully failed to disclose that the Recalled Products posed health and safety risks to infants;
- Whether Defendants' representations and omissions in advertising, warranties, packaging, and/or labeling were false, deceptive, and/or misleading;
- Whether those representations and omissions were likely to deceive a reasonable consumer;
- Whether a reasonable consumer would consider the presence, or risk of, health and safety risks of their infant children as a material fact in purchasing one of the Recalled Products;
- Whether Defendants had knowledge that those representations and omissions were false, deceptive, and misleading;
- Whether Defendants breached its express warranties;

- Whether Defendants breached its implied warranties;
- Whether Defendants engaged in false advertising;
- Whether Defendants' conduct was negligent per se;
- Whether Defendants made negligent and/or fraudulent misrepresentation and/or omissions; and
- Whether Plaintiff and the members of the Class are entitled to actual, statutory and punitive damages.

57. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other members of the proposed Class. Plaintiff and members of the Class suffered injuries as a result of Defendants' wrongful conduct that is uniform across the Class.

58. **Adequacy (Rule 23(a)(4)).** Plaintiff's interests are aligned with the Class they seek to represent. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent counsel experience in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interests of the Class. Plaintiff has no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class.

59. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class, and would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Class treatment will create economies of time, effort and expense and promote uniform decision-making.

60. **Certification of Specific Issues (Rule 23(c)(4)).** To the extent that any described Class herein does not meet the requirements of Rule 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

61. **Declaratory and Injunctive Relief (Rule 23(b)(2)).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive and declaratory relief, as described herein, with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

64. Plaintiff does not allege that an express contract with the Defendant exists. Her product was manufactured in May 2024 and, according to the Defendant's website, the product came with a 90-day limited warranty[12] which has lapsed.

65. Plaintiff pleads this count in the alternative is an equitable demand or a quasi-contract. In order to assert this claim, Plaintiff, through this complaint will establish: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3)

---

[12] https://images.salsify.com/image/upload/s--pYSPI-g5--/ltvh6sll1twxbxq6bxky

retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. See: *Hambleton v. R.G. Barry Corp*, 12 Ohio St. 3d 179, 183 (1984).

66. Plaintiff and the Class conferred substantial benefits on Defendants through their purchase of the Recalled Products. Simply put, the benefit is “money” in the form of revenue and, presumably, profit in favor of the Defendant. Defendants knowingly and willingly accepted and enjoyed these monetary benefits- even knowing about the alleged defect as early as October 2023.

67. Defendants either knew or should have known that the payments rendered by Plaintiff and the Class was given with the expectation that the Recalled Products would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. The Defendant’s website contains language suggesting they promote safety and design innovation for families. Here, this was not the case. With this Product, children were exposed to a choking hazard. A risk known to the Defendant early in production and should have been known pre-production through testing.

68. As noted above in the complaint, the Defendant continued to accept this benefit even after knowing of the alleged defect as early as October 2023. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

69. Defendants’ acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class. Afterall, continuing to solicit, accept, and retain money for the sales of a defective product that exposes children to a choking hazard that was known to the Defendant when it sold Plaintiff her product is patently unfair and is unjust.

70. Plaintiff and the Class are entitled to recover from Defendants all revenue wrongfully collected and improperly retained by Defendant, plus interest thereon.

71. Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

72. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

73. Plaintiff brings this claim against Defendant on behalf of herself and the other Members of the Nationwide Class (the "Classes").

74. A good is merchantable when it is fit for the ordinary purposes for which such goods are used.

75. Safety is of paramount importance when the "good" in question is a car seat. Designing a car seat that presents itself with a choking hazard and exposing a child to an unforeseen danger that could prove fatal enders it unfit for its ordinary purpose.

76. Defendant is a merchant engaged in the sale of goods, including the defective Car Seats, to Plaintiffs and the Class.

77. There was a sale of goods from Defendant to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

78. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

79. However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk of choking, which was not disclosed to consumers at the time of sale. The Defendant knew about this defect as early as October 2023 and sold the Plaintiff her product in March 2025.

80. Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

81. Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the choking hazard yet failed to take corrective action before selling the Products.

82. Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

83. Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

84. Plaintiff and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

85. The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

86. The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

87. Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendant's control.

88. As a direct and proximate result of the defective Products, Plaintiff and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

89. Defendant attempted to limit or disclaim their implied warranties, but any such

disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

90. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as to each and every count, including:

A. An order certifying this action and the Class requested herein as a class action, designating Plaintiff as representative of the Class and appointing Plaintiff's counsel as counsel to the Class;

B. An order declaring that liable to Plaintiff and the Class, as described herein, for damages arising therefrom;

C. A judgment awarding Plaintiff and members of the class all appropriate damages in an amount to be determined at trial;

D. A judgment awarding Plaintiff and the Class prejudgment and post-judgment interest, as permitted by law;

E. A judgment awarding Plaintiff and the Class costs and fees, including attorney's fees, as permitted by law; and

F. Grant such other legal, equitable, or further relief as the Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 26, 2025.

Respectfully Submitted,

<u>/s/ Christina Xenides</u>
Christina Xenides #677603
**SIRI GLIMSTAD**
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (737) 313-8560
Email: cxenides@sirillp.com

-AND-

Paul J. Doolittle, Esq. (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff*